**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01802-REB-KLM

BITUMINOUS CASUALTY CORPORATION, an Illinois corporation,

    Plaintiff,

v.

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, a Kansas corporation,

    Defendant and Third-Party Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation, and
OWNERS INSURANCE COMPANY, an Ohio corporation,

    Third-Party Defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

**Blackburn, J.**

Initially, this case was filed by plaintiff, Bituminous Casualty Corporation, an insurance company. Bituminous sought to recover from the defendant, Trinity Universal Insurance Company of Kansas, sums paid for the defense of claims brought against D.R. Horton, Inc. - Denver. I will refer to the costs at issue as defense costs. Trinity filed a third-party complaint [#29][1] asserting claims against third-party defendants Auto-Owners Insurance Company, Axis Surplus Insurance Company, and Owners Insurance Company. In the third-party complaint, Trinity alleged that, to the extent Trinity is liable to Bituminous

---

[1] "[#29]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

for defense costs, Trinity is entitled to recover defense costs from the third-party defendants.

Trinity's third-party claims against Axis were dismissed in the order [#106] filed September 3, 2013. Later, Bituminous and Trinity reached a settlement in which Trinity agreed to pay 50,000 dollars in defense costs to Bituminous. **Final Pretrial Order** [#142] filed November 15, 2013, Stipulation 14. Accordingly, on December 23, 2013, Bituminous and Trinity filed a **Notice of Dismissal of Claims Between Bituminous Casualty Corporation and Trinity Universal Insurance Company of Kansas** [#154].[2]

The claims currently before the court are Trinity's third-party claims against third-party defendants Auto-Owners Insurance Company and Owners Insurance Company (Auto-Owners and Owners). In its third-party complaint, Trinity alleges that Auto-Owners and Owners are liable to Trinity for the defense costs paid by Trinity to Bituminous.

On December 2 - 3, 2013, this matter came before me for trial to the court on Trinity's claims against Auto-Owners and Owners. In assessing the credibility of each witness who testified at trial, the court has considered all facts and circumstances shown by the evidence that affect the credibility of the witness, including the following factors: each witness's means of knowledge, ability to observe, and strength of memory; the manner in which each witness might be affected by the outcome of the litigation; the relationship each witness has or had to either side in the case; and the extent to which each witness is either supported or contradicted by other evidence presented at trial. Having judicially noticed all relevant adjudicative facts in the file and record of this action; having considered the stipulations of the parties, the evidence educed at trial, and the

---

[2] I will approve the notice and concomitant dismissal of claims in a separate order.

arguments advanced and the authorities cited by the parties during pretrial proceedings and at trial, I enter the following statement of jurisdiction, findings of fact – which are supported by a preponderance of the evidence – conclusions of law, and orders.[3]

## I. JURISDICTION & CONTROLLING LAW

This Court has jurisdiction over this case under 28 U.S.C. § 1367 (supplemental). *Order* [#140] filed November 15, 2013. Colorado law controls the resolution of the substantive issues in this case. **Erie Railroad Co. v. Tompkins**, 304 U.S. 64, 78 (1938); **Royal Maccabees Life Insurance Co. v. Choren**, 393 F.3d 1175, 1180 (10th Cir. 2005).

## II. FINDINGS OF FACT

These findings of fact are based on the stipulated facts stated by Trinity, Owners, and Auto-Owners in the **Final Pretrial Order** [#142] filed November 15, 2013, the exhibits admitted in evidence, and the testimony received during the trial to the court. Each of the stipulations of the parties, as stated in the **Final Pretrial Order** [#142] filed November 15, 2013, is incorporated into my findings of fact. I refer to those stipulations by the paragraph number assigned to them in the **Final Pretrial Order** [#142], e.g., Stipulation 1.

### A. BACKGROUND

1. D.R. Horton, Inc.-Denver (DRH) acted as the general contractor and developer for the Prairie Ridge Development (Prairie Ridge), a residential housing complex located in Aurora, Colorado. DRH contracted with a number of subcontractors to complete the Prairie Ridge project. Stipulations 1 and 2.

2. In July 2002, Metco Landscape, Inc. contracted with DRH to provide landscaping and irrigation services at Prairie Ridge.

---

[3] I state my findings of fact specifically and conclusions of law separately as required by Fed. R. Civ. P. 52(a)(1).

3. Metco completed its work at Prairie Ridge in September 2004.

4. The contract between Metco and DRH required Metco to obtain commercial general liability insurance naming DRH as an additional insured. Metco purchased commercial general liability insurance policies from the carriers listed in the following three paragraphs.

5. Trinity Universal Insurance Company of Kansas issued to Metco Policy No. CPA 9566865, effective May 27, 2002, to May 27, 2003. Exhibit 1, Stipulation 5 .

6. Owners Insurance Company issued to Metco policy no. 034632-45462262-03, effective May 27, 2003, to May 27, 2004, and policy no. 034632-74462262-04, effective May 27, 2004, to May 27, 2005. Stipulation 6.

7. Bituminous Casualty Corporation issued to Metco Policy No. CLP 3226222, effective April 1, 2006, to January 1, 2007. Stipulation 4.

B.  THE UNDERLYING ACTION &
THE REFUSAL OF OWNERS TO DEFEND DRH

8. On or about October 15, 2007, the Prairie Ridge at Saddle Rock East Condominium Association, Inc. (HOA) filed a complaint against DRH and others in the District Court, Arapahoe County, Colorado (Case No. 2007 CV 2125). In the complaint, the HOA alleged construction defects at the Prairie Ridge development. The claims asserted in the complaint were addressed in an arbitration proceeding at the Judicial Arbiter Group in Denver (JAG) (Case No. 2010-0544) (Underlying Action). The HOA filed its arbitration complaint in JAG No. 2010-0544 on January 21, 2010. Stipulations 1, 12, 13.

9. In both the district court complaint and the arbitration complaint, the HOA alleged that sometime after June 2004, "damage resultant from certain construction defects

became apparent at particular locations in the community." Exhibit 3, ¶ 12; Exhibit 4, ¶ 7. The arbitration complaint, Exhibit 4, specifies a variety of defects, some of which implicate work performed by Metco.  Exhibit 4, ¶ 7.

10.  Prior to the filing of the Underlying Action, the HOA served DRH with a Notice of Claim under §13-20-803.5, et seq, C.R.S. (Notice of Claim).  Stipulation 7.

11.  DRH retained the law firm of Higgins Hopkins McLain & Roswell (HHMR) to represent its interests in connection with the Notice of Claim.  Stipulation 8.

12.  In a letter dated April 20, 2007, HHMR tendered the defense of DRH to Trinity, Owners, and Auto-Owners. Stipulation 9.

13.  Subject to reservations of rights, Bituminous and Trinity participated in the defense of DRH in the Underlying Action.  Stipulation 11.

14.  Owners participated in the defense of Metco in the Underlying Action, but refused to participate in the defense of DRH in the Underlying Action.

15.  Owners concluded that DRH was not an additional insured under the Owners policies issued to Metco.  Stipulation 10.

16.  In response to the tender of defense by DRH, Owners reviewed its underwriting file to determine if its records showed that DRH was named as an additional insured under the Owners policies issued to Metco.  Owners research indicated that the Owners policies contained no endorsement or declaration naming DRH as an additional insured.  Mark Cox, an underwriting manager for Owners, was not able to locate in the underwriting file a copy of a form 55202 endorsement naming DRH as an additional insured, nor could he locate any other endorsement naming DRH as an additional insured.

17.  Auto-Owners Insurance Company never issued a policy that insured Metco or DRH at the times relevant to this case.

18. Owners Insurance Company is a wholly owned subsidiary of Auto-Owners Insurance Company. The two companies are distinct corporate entities. However, some individuals involved in this case have used the names Auto-Owners and Owners interchangeably, even though they know that technically Auto-Owners and Owners are distinct entities. At least one of the documents in eviddence shows that the name Auto-Owners was used in a document when referring to the Owners policies covering Metco. *Exhibit 8*, p. 3; *Exhibit 11*, p. 1 (Acord Certificate of Liability Insurance showing "Auto Owners Insurance Company" as the insurer affording coverage; both exhibits are copies of a certificate dated July 18,2003).

## C.  THE ADDITION OF DRH AS AN INSURED UNDER THE OWNERS INSURANCE POLICIES

19. On or before July 2003, Metco intended to include DRH as an additional insured on the Owners policy covering Metco at that time.

20. On or about July 18, 2003, Metco contacted Keller-Lowry Insurance, Inc., the insurance producer that was acting as an agent for Owners. Metco asked Keller-Lowry to add DRH as an additional insured on the Owners policy covering Metco.

21. The agency contract between Keller-Lowry, Auto-Owners, Owners, and others authorized Keller-Lowry, in part, "[t]o solicit and secure applications and to bind coverage for contracts of insurance on behalf of [Owners], subject to: (1) Company rules and regulations…." Exhibit 10, p. 1.

22. On July 18, 2003, Teresa Heupel, an employee of Keller-Lowry, prepared and issued an Acord Certificate of Liability Insurance showing that DRH and its "Affiliates & Subsidiaries are added as additional insured per 55202 attached." Exhibit 8, p. 3.

23. Keller-Lowry prepared and issued two additional certificates of insurance

6

related to the addition of DRH as an insured under the Owners policies covering Metco. These additional certificates are dated May 25, 2004, and September 17, 2004. Exhibits 12 and 13. The two additional certificates of insurance also refer to an attached form 55202.

24. The July 18, 2003, certificate, Exhibit 11, names "Auto Owners Insurance" as the insurer affording coverage and specifies general liability coverage under policy number 45462262. In this certificate, Auto-Owners Insurance was named erroneously as the insurance company affording coverage. It is undisputed that policy number 45462262, the policy specified in the certificate, is a policy issued to Metco by Owners Insurance Company, which policy provided coverage by Owners to Metco from May 27, 2003, to May 27, 2004, as specified in the certificate.

25. The May 25, 2004, and September 17, 2004, certificates of insurance, Exhibits 12 and 13, correctly name "Owners Insurance Company" as the insurer affording coverage and specify general liability coverage under policy number 7446226204.

26. Given the routine practice of Ms. Heupel and Keller-Lowry in 2003 and 2004, Ms. Heupel would not have prepared the certificates of insurance, Exhibits 11, 12, and 13, without a request from Metco to add DRH as an insured under Metco's policy.

27. In 2003 and 2004, it was the routine practice of Ms. Heupel and Keller-Lowry to obtain the approval of an underwriter at Owners before preparing a certificate of insurance which referenced a 55202 endorsement form.

28. Keller-Lowry obtained the approval of an underwriter at Owners before preparing the certificates of insurance shown in Exhibits 11, 12, and 13, and Keller-Lowry had the authority to issue those certificates of insurance.

29. Each Owners form 55202 is an endorsement to the underlying policy and each

form 55202 reflects an agreement by Owners to add to the policy the additional insured named in the form 55202.

30. In 2003 and 2004, it was not the routine practice of Keller-Lowry or Ms. Heupel to prepare and issue form 55202 endorsements. Rather, Owners typically prepared such endorsements after receiving a request to add an additional insured, which request was typically relayed to Owners via Keller-Lowry.

31. In 2003 to 2004, it was the routine practice of Keller-Lowry to attach a form 55202 to a certificate of insurance if the form 55202 endorsement was applicable to the coverage described in the certificate. The form 55202 would be attached contemporaneously with the creation of a certificate of insurance, except when the certificate of insurance was issued as the result of a renewal of an Owners policy.

32. When Keller-Lowry issued a certificate of insurance based on the renewal of a policy, a form 55202 typically would not be attached to the certificate immediately after the certificate was created. Rather, the insurance company would issue the endorsement four to six weeks after the renewal. When the endorsement was issued, Keller-Lowry would generate a new certificate of insurance, attach the endorsement, and deliver the documents to the named insured, the certificate holder, and the insurance company.

33. Exhibit 25 includes a note from the underwriting file of Owners concerning the addition of DRH as an additional insured on Metco's insurance policy. The underwriting note, dated June 29, 2004, states, "Declined to add DR Horton as 55205 for Prairie Ridge Community Project. OK to add 55202." This underwriting note was made by Owners approximately one month after the May 25, 2004, renewal of the owners insurance policy covering Metco.

34. The creation of the June 29, 2004, underwriting note approximately one month

after the renewal of the Owners policy covering Metco on May 27, 2004, is consistent with the routine practice described by Ms. Heupel concerning renewals. Under that routine practice, Owners would issue an endorsement, such as a form 55202 endorsement, four to six weeks after the renewal of a policy.

35. Owners issued a form 55202 endorsement on or about June 29, 2004.

36. Form 55202 is an endorsement form used by Owners to reflect the addition of an additional insured to a commercial general liability insurance policy. Exhibit 26 is an example of a form 55202. Form 55202 excludes coverage of products completed operations. In contrast, endorsement form 55205 is a form that adds an additional insured and includes coverage of products completed operations.

37. A form 55202 endorsement from Owners Insurance Company was attached to each of the three certificates of insurance shown in Exhibits 11, 12, and 13, and these form 55202 endorsements reflected coverage of DRH under an Owners commercial general liability policy covering Metco.

38. When Keller-Lowry issued a certificate of insurance in 2003 and 2004, it was the routine practice of Ms. Heupel and Keller-Lowry to deliver a copy of a certificate of insurance and any attachments to the certificate holder, the insured named in the policy, and the insurance company.

39. The certificates of insurance shown in Exhibits 11, 12, and 13, with attachments, were delivered to the certificate holder, the insured named in the policy, and Owners insurance company.

40. Each Acord Certificate of Liability Insurance shown in Exhibits 11, 12, and 13 contains language limiting the effect of the document. This language states: "This certificate of insurance is issued as a matter of information only and confers no rights upon

the certificate holder.  This certificate does not amend, extend or alter the coverage afforded by the policies below."

41.   When DRH tendered its defense in the Underlying Action to Owners, Owners was not able to find any documentation indicating that Metco, DRH, or Keller-Lowry had submitted a written request that DRH be added to Metco's policies as an additional insured.  In 2003 and 2004, it was the routine practice of Owners to add an additional insured to a policy only after Owners received a written request to do so.

42.   While the Owners policies covering Metco were in effect and after those policies expired, both Owners and Keller-Lowry maintained documents and information in electronic and paper form.  Given the document retention and destruction policies of both Owners and Keller-Lowry during the relevant time, it is more likely than not that paper documents relevant to this case were destroyed before Owners and Keller-Lowry searched their records for paper documents relevant to this case.

43.   It is more likely than not that paper written requests to add DRH as an additional insured on an Owners policy covering Metco were destroyed under the document retention and destruction policies of both Owners and Keller-Lowry.

44.   It is more likely than not that paper certificates of insurance that Keller-Lowry mailed to Owners related to the coverage of DRH under an Owners policy covering Metco were destroyed under the document retention and destruction policies of both Owners and Keller-Lowry.

45.   None of the evidence in the record of this case reflects the specific terms of the Owners insurance policies issued to Metco covering the period from May 27, 2003, to May 27, 2005.

## III.  CONCLUSIONS OF LAW[4]

1.  In its third-party complaint, Trinity asserts five claims against Owners and Auto-Owners, as third-party defendants: (1) equitable subrogation; (2) contractual subrogation; (3) equitable contribution; (4) unjust enrichment; and (5) declaratory relief.  In each of these claims, Trinity seeks to recover from Owners and Auto-Owners the defense costs Trinity paid on behalf of DRH.

2.  Trinity, Owners, and Auto-Owners have stipulated that Auto-Owners Insurance Company did not issue an insurance policy to Metco and that Auto-Owners never had a duty to defend Metco in the Underlying Action.  At the beginning of the trial, the parties noted this stipulation but Auto-Owners said it would not stipulate to the dismissal of the claims against Auto-Owners, with each party to bear its own costs. Auto-Owners believes it is entitled to recover its costs from Trinity.  Thus, the claims of Trinity against Auto-Owners remain pending.

3.  Trinity has not proven by a preponderance of the evidence that Auto-Owners is liable to Trinity on any of Trinity's third-party claims against Auto-Owners.  Thus, Auto-Owners is entitled to the entry of judgment in favor of Auto-Owners against Trinity on each of the third-party claims of Trinity against Auto-Owners.

4.  Each of the claims of Trinity against Owners is based on the contentions: (a) that DRH was an additional insured under one or both of the Owners policies covering Metco; (b) that under the terms of the Owners policies, Owners had a duty to defend DRH in the Underlying Action; and (c) that the duty to defend included an obligation to pay a share of the defense costs incurred in the defense of DRH in the Underlying Action.

---

[4] Any finding of fact deemed more properly a conclusion of law, or any conclusion of law deemed more properly a finding of fact, shall be as more properly characterized.

11

5. Owners agreed to add DRH as an additional insured, as reflected in the certificates of insurance shown in Exhibits 11, 12, and 13, and the form 55202 endorsements that were attached to the certificates of insurance. The evidence shows that the currently available records of Owners do not include documentation showing that DRH was added as an additional insured on the Owners policies covering Metco. The fact that the currently available records of Owners do not include such documentation tends to show that Owners did not agree to add DRH as an additional insured on the policies covering Metco. The testimony and exhibits presented by Trinity establish persuasively the routine practices of Owners and Keller-Lowry at the relevant times. The documents presented by Trinity and admitted in evidence are consistent with these routine practices and tend to show that Owners agreed to add DRH as an additional insured on the policies covering Metco. On balance, I conclude that the evidence presented by Trinity showing that Owners agreed to add DRH as an additional insured on the Owners policies covering Metco is more persuasive than the contrary evidence presented by Owners. The evidence in the record proves by a preponderance of the evidence that Owners agreed to add DRH as an additional insured on the Owners policies covering Metco.

6. Each of the five third-party claims asserted by Trinity requires proof that Owners had a duty to defend DRH under an Owners policy covering Metco. None of the evidence in the record shows the terms of the Owners policies covering Metco or shows that one or both of the Owners policies covering Metco provided coverage for the claims asserted against DRH in the Underlying Action. The evidence in the record does not establish by a preponderance of the evidence that Owners had a duty to defend DRH in the Underlying Action, even though DRH was an additional insured under the Owners policies covering Metco. Absent proof that Owners had a duty to defend DRH in the Underlying Action, there

is no basis to conclude that Owners is obligated to pay any share of the defense costs incurred by Trinity in the Underlying Action.

7. The equitable subrogation claim requires proof that, in justice, Owners should pay some of the defense costs. Absent proof that Owners had a duty to defend DRH under one or both of the Owners policies covering Metco, there is no basis to conclude that, in justice, Owners should pay some of the defense costs.

8. The contractual subrogation claim requires proof that DRH is entitled to coverage under the Owners policies and, therefore, has a right to recover defense costs from Owners. According to Trinity, the right of DRH to recover defense costs against Owners, based on coverage of DRH under an Owners policy, is transferred to Trinity by contractual subrogation under the terms of the Trinity policy covering Metco. However, absent proof that Owners had a duty to defend DRH under one or both of the Owners policies covering Metco, there is no basis to conclude that DRH has a right to recover defense costs from Owners.

9. The equitable contribution claim requires proof that Owners is liable to cover some or all of the cost of defending DRH. In the context of a claim against a co-insurer, an equitable contribution claim requires proof that the defendant co-insurer is liable to cover a loss. ***See Midwest Mut. Ins. Co. v. Murry***, 971 P.2d 295, 299 (Colo. App. 1998). Once again, absent proof that Owners had a duty to defend DRH under one or both of the Owners policies covering Metco, there is no basis to conclude that Owners is liable to cover a loss, here the defense costs paid by Trinity.

10. The unjust enrichment claim requires proof that it would be inequitable for Owners to retain the benefit of Trinity's payment of the defense costs of DRH without payment by Owners of the value of that benefit. Absent proof that Owners had a duty to

defend DRH under one or both of the Owners policies covering Metco, there is no basis to conclude that Owners benefitted from the payment of defense costs by Trinity or that it would be inequitable for Owners to retain any purported benefit.

11.  The declaratory judgment claim requires proof that Owners or Auto-Owners is obligated to pay the defense costs of DRH.  Absent proof that Owners had a duty to defend DRH under one or both of the Owners policies covering Metco, there is no basis to conclude that Owners is obligated to pay the defense costs of DRH.

12.  Trinity has not proven by a preponderance of the evidence that it is entitled to relief on any of its five third-party claims against Owners.  Thus, Trinity is not entitled to relief in any form on any of the five third-party claims Trinity asserts against Owners.  Instead, Owners is entitled to judgment in its favor on each of the five third-party claims Trinity asserts against Owners.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That each of the five third-party claims asserted by third-party plaintiff, Trinity Universal Insurance Company of Kansas, against third-party defendant, Auto-Owners Mutual Insurance Company, is **RESOLVED** against the third-party plaintiff, Trinity Universal Insurance Company of Kansas, and in favor of third-party defendant Auto-Owners Mutual Insurance Company;

2. That each of the five third-party claims asserted by third-party plaintiff, Trinity Universal Insurance Company of Kansas, against third-party defendant, Owners Insurance Company, is **RESOLVED** against the third-party plaintiff, Trinity Universal Insurance Company of Kansas, and in favor of third-party defendant, Owners Insurance Company;

3. That **JUDGMENT SHALL ENTER** in favor of the third-party defendants, Auto-Owners Mutual Insurance Company, a Michigan Corporation, and Owners Insurance Company, an Ohio corporation, against the third-party plaintiff, Trinity Universal Insurance Company of Kansas, on each of the five third-party claims asserted by third-party plaintiff, Trinity Universal Insurance Company of Kansas; and

4. That the third-party defendants are **AWARDED** their costs to be taxed by the clerk of the court in the time and manner provided by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated February 6, 2014, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge